**Ervin R. HALL–BEY, Plaintiff–Appellant,**

v.

**Craig A. HANKS and Jack Hendrix, Defendants–Appellees.**

No. 02–4050.

United States Court of Appeals, Seventh Circuit.

Submitted March 25, 2004.*

Decided March 25, 2004.

Ervin R. Hall–Bey, Wabash Valley Correctional Facility, Carlisle, IN, pro se.

Justin F. Roebel, Office of the Attorney General, Indianapolis, IN, for Defendants–Appellees.

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

## ORDER

Ervin R. Hall–Bey, an inmate at Wabash Valley Correctional Facility in Indiana, brought suit under 42 U.S.C. § 1983, alleging, as relevant here, that Superintendent Hanks and Supervisor of Classification Hendrix retaliated for a letter accusing Hanks and his office of racism by placing him in administrative segregation and violated his right to due process by moving him to segregation without a hearing. The district court granted summary judgment for the defendants after concluding that Hall–Bey in fact was really trying to use § 1983 to challenge a still-valid disciplinary conviction. We affirm, but on other grounds.

Taking all facts and inferences in favor of Hall–Bey as the non-moving party, *see Robinson v. Sappington,* 351 F.3d 317, 320 n. 1 (7th Cir.2003), we describe the events leading up to his placement in administrative segregation. In January 2000 Hall–Bey, who is African–American, was placed in investigatory segregation pending the outcome of an already 15–month–old investigation into his drug trafficking activities. Later that month he was charged with trafficking and found guilty by a disciplinary board. According to Hall–Bey, though, three white inmates were also confined to investigatory segregation with him awaiting hearings on unrelated charges, and in all four cases the prison violated its internal time limits for holding inmates in segregation before their disciplinary hearings. After being found guilty, each inmate appealed his conviction on that ground, but only the white inmates succeeded in overturning their convictions.

In addition to several other disciplinary convictions that he accumulated during the next two months, Hall–Bey received three conduct reports written on March 2, 2000, alleging that he had laundered money during three separate incidents in June and July 1998. Shortly afterward, on March 13, 2000, Hall–Bey wrote to Hanks accusing him and those he supervised of racism based on their handling of the four inmates' administrative appeals along "racial lines"; Hall–Bey also submitted a complaint against Hanks to the central office of the Indiana Department of Corrections. Two days later a disciplinary board convened a hearing on the money laundering charges. Hall–Bey was convicted on all three charges, and for each was penalized with one-year of disciplinary segregation and the loss of 90 days' good time credit. Hall–Bey appealed, arguing that the prison had impermissibly stacked the charges. Reviewing officials agreed, dismissing two of the charges and accordingly reducing his punishment as well as reducing the remaining charge to a lesser offense, "Aiding in Giving and/or Receiving without Proper Authorization." The Department of Corrections then transferred Hall–Bey to the Maximum Control Facility (MCF) to serve his disciplinary segregation for the disciplinary conviction from March 2000. While at MCF, Hall–Bey learned about a consent decree (applicable only to that the facility) that disallows placing inmates in administrative segregation *at MCF* after they have completed a term of disciplinary segregation without further infractions. Hall–Bey, though, after finishing his disciplinary segregation at MCF, was transferred back in May 2001 to Wabash Valley where Superintendent Hanks immediately placed him in administrative segregation. It is this placement that underlies Hall–Bey's lawsuit.

Hanks denied that there was any retaliatory or racial motive behind his decision. Instead, Hanks attests, he assigned Hall–Bey to administrative segregation upon his return because "the needs of institutional security and the safety of staff and other offenders required" the placement. Ac-

cording to Hanks, Hall–Bey's multiple convictions for possessing drugs and unauthorized currency demonstrated that he was involved in trafficking drugs within the facility, and several offenders had asked to be separated from him in part due to these trafficking operations.

A month before Superintendent Hanks released him from administrative segregation, Hall–Bey filed this suit. In granting summary judgment for the defendants, the district court concluded that Hall–Bey was challenging as retaliatory the January 2000 disciplinary conviction for trafficking that sparked him to write a letter to Hanks. Hence, the district court held that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), barred Hall–Bey from bringing a § 1983 retaliation claim because he had not first succeeded in overturning the conviction through administrative channels or habeas corpus proceedings. The district court also concluded that Hall–Bey did not have a protected liberty interest in remaining in the general population, so he was not entitled to any due process safeguards before his placement in administrative segregation. After he tried unsuccessfully to correct the district court's misperception about the basis for his retaliation claim in a motion under Fed.R.Civ.P. 59, Hall–Bey appealed.

■ Hall–Bey first argues that *Heck* and *Edwards* do not bar his retaliation claim because he challenges as retaliatory only Superintendent Hanks' decision to place him in administrative segregation when he returned to Wabash Valley from MCF–not any disciplinary conviction. We agree. Under *Heck* and *Edwards* a prisoner may not bring a § 1983 suit that, if successful, would undermine a still-valid disciplinary conviction. *Edwards*, 520 U.S. at 648, 117 S.Ct. 1584; *Heck*, 512 U.S. at

486–87, 114 S.Ct. 2364. But *Heck* and *Edwards* limit only challenges to the fact or duration of a prisoner's sentence, not the conditions of his confinement. *DeWalt v. Carter*, 224 F.3d 607, 617–18 (7th Cir. 2000). Hall–Bey's challenge to the administrative decision to place him in segregation, considered a condition of confinement, could not invalidate any underlying conviction if successful, so it is not *Heck*-barred. *See Muhammad v. Close*, —— U.S. ——, ——, 124 S.Ct. 1303, 1306, 158 L.Ed.2d 32 (2004). And neither does *Heck* block Hall–Bey from relying on the multiple money laundering charges as evidence from which retaliation could be inferred because two of the three charges were actually invalidated as "stacking."

■ But that does not mean that he prevails on appeal. Even though Hall–Bey was not barred from bringing his civil rights claim, he does not show any genuine issue of material fact that would require reversing the district court's grant of summary judgment. *See Edwards v. Ill. Bd. of Admissions to the Bar*, 261 F.3d 723, 728 (7th Cir.2001) (district court's judgment may be affirmed on any basis supported by record). Hall–Bey first argues that the defendants placed him in administrative segregation after he had already completed his term in disciplinary segregation in retaliation for accusing Superintendent Hanks and his office of racism in a letter and complaint. The defendants do not dispute that Hall–Bey's writing of the letter and complaint were constitutionally protected activities. Instead, they argue that the undisputed evidence establishes that Superintendent Hanks based his decision to place Hall–Bey in administrative segregation solely on concerns about institutional safety.

Although Hall–Bey contends that all he needed to show to defeat summary judgment was a chronological series of events

from which a jury could reasonably infer retaliation, he in fact was required to produce evidence that would establish that his protected activity was a substantial or motivating factor in the defendants' challenged actions. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996). Hall–Bey, however, offered only a timeline of events, and even assuming that the timing of the two-day span between his letter and the hearing on the money laundering charges, followed by the disciplinary and subsequent administrative segregations, was suspicious, temporal proximity alone cannot establish retaliation. *See Pugh v. City of Attica*, 259 F.3d 619, 630 (7th Cir.2001); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir.2001). Hall–Bey's only other support for his claim is his own speculation that the defendants placed him in administrative segregation because of his accusation of racism, but conclusory statements cannot sustain a non-movant's burden on summary judgment, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir.1999). Moreover, Hall–Bey has not asserted any facts linking Supervisor Hendrix to the allegedly retaliatory decisions or Superintendent Hanks to the three disciplinary convictions for money laundering. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir.2000) (§ 1983 liability requires that individual have caused or participated directly in constitutional violation). And Hanks' reasons for placing Hall–Bey in administrative segregation are within the scope of Indiana policy. *See* Indiana Department of Corrections, Operational Procedures for Policy 02–01–111.

Hall–Bey's claim that due process safeguards required a hearing before he could be placed in administrative segregation fares no better. Administrative segregation for the purposes of institutional safety and security does not trigger a due process right to a hearing. *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir.2002). And to the extent that Hall–Bey suggests that the defendants violated the consent decree in effect at MCF by placing him in administrative segregation following his return to Wabash Valley, it is enough to note that the decree barring MCF from imposing indefinite terms of administrative segregation that had been used punitively at the facility, *see Isby v. Bayh*, 75 F.3d 1191, 1194 (7th Cir.1996), does not apply to Wabash Valley. Finally, Hall–Bey's equal protection claim raised on appeal was not presented to the district court, so it is waived. *See Belom v. Nat'l Futures Assoc.*, 284 F.3d 795, 799 (7th Cir.2002).

AFFIRMED.